# Gibson *v.* Wallace.

*Bill to Foreclose Mortgage.*

(Decided June 30th, 1906.   41 So. Rep. 960.)

1. *Husband and Wife; Suretyship of Wife; Burden of Proof.*—The burden is on the wife to show that the debt, evidenced by a note and mortgage signed by both husband and wife, was that of the husband merely, and that she executed the same only as his surety.

2. *Evidence; Parol Evidence; Principal and Surety.*—Parol evidence is admissible to show that the wife signed as surety only a note and mortgage executed by the husband and wife.

3. *Husband and Wife; Agency of Husband.*—The lender knew that the husband was the general agent of the wife; he declared that he would not make a loan to the husband, but that if he would get his wife to give a mortgage on her land, he would let the husband have the money.   Held, should be construed to mean that the lender would let the husband have the money "for the wife."

4. *Same; Evidence.*—The evidence in this case examined and held to show that the wife was the principal debtor and not merely surety for the husband.

APPEAL from Lawrence Chancery Court.
Heard before HON. W. H. SIMPSON.

This was a bill filed by W. K. Wallace to foreclose a mortgage executed to him by E. R. Gibson, a married woman. The facts are sufficiently stated in the opinion of the court. From a decree granting the relief prayed this appeal is prosecuted.

W. T. LOWE, and KIRK, CARMICHAEL & RATHER, for appellant.—If the debt secured by the note and mortgage was that of the husband the wife's property cannot be sold to pay it, although she executed the mortgage.— § 2529, code 1896; *Continental Bank v. Clark,* 117 Ala. 292; *Richardson v. Stephens,* 114 Ala. 238. If the appellant executed the mortgage under duress of the husband, and appellee knew this, the mortgage is invalid.—

[Gibson v. Wallace.]

*Noble v. Moses,* 81 Ala. 530; *Moses v. Dade,* 58 Ala. 211; *Rogers v. Adams,* 66 Ala. 600; *Walker v. Nicrosi,* 135 Ala. 354.

It may be shown by parol evidence that the wife signed as security for the husband.—*Compton v. Smith,* 120 Ala. 233; *Howle v. Edwards,* 113 Ala. 187; *Continental Bank v. Clark, supra.* The fact that the wife's name appears first on the note does not make it her debt. —*Continental Bank v. Clark, supra; Richardson v. Stephenson, supra.* The acknowledgement can be impeached by showing fraud and undue influence.—*Grider v. A. F. L. N. Co.,* 99 Ala. 284; *Moses v. Dade, supra.*

D. C. ALMON, for appellee.—If appellee did not participate in or know of, or induce or was privy to the alleged undue influence in this case, it could not affect his rights.—*Walker v. Nicrosi,* 135 Ala. 353; *Pratt L. & I. Co. v. McClain,* Ib. 452. The acknowledgement is supposed to speak the truth.—*American Co. v. James,* 105 Ala. 347. In the absence of fraud or duress a certificate of acknowledgement valid on its face cannot be impeached by parol evidence.—*Grider v. American Mtg. Co.,* 99 Ala. 281; *American Mtg. Co. v. Thornton,* 108 Ala. 268. The burden of proving that it was not appellant's debt was upon her.—*Mohr v. Griffin,* 34 So. Rep. 378.

WEAKLEY, C. J.—The bill was filed by W. K. Wallace against E. R. Gibson, a married woman, to foreclose a mortgage executed by her with the consent and concurrence of her husband upon her property. The mortgage recites that she was indebted to the mortgagee in a certain sum, evidenced by a described instrument of even date, and this instrument, which is exhibited with the bill, is the note of both husband and wife, her signature being first written.

The defenses are two in number: First, that she executed the mortgage under the duress of the husband, of which the mortgagee had knowlede; and second, that she had signed the note and mortgage as surety of the husband merely. The chancellor, on the evidence, was of opinion she had failed to establish either defense, and

decreed foreclosure for the amount of the note, less a small credit, and attorney's fees. While there is evidence of general mistreatment of the wife by the husband, we are not reasonably satisfied that she executed the mortgage under his coercion or duress; and if she did, there is want of sufficient evidence that the mortgagee either participated in or was cognizant of it.— *Walker v. Nicrosi*, 135 Ala. 353, 33 South. 161; *Mohr v. Griffin*, 137 Ala. 456, 34 South. 378. The burden of proof rests upon the wife to show that the debt was that of the husband merely and that she executed the instruments (the note and mortgage) as his surety.—*Mohr v. Griffin*, 137 Ala. 456, 34 South. 378; *Lunsford v. Harrison*, 131 Ala. 263, 31 South. 24. The note and mortgage, prima facie, constitute an indebtedness of her own, although parol evidence is admissible to establish her suretyship if it in reality existed. Many cases of the same general nature as this have been presented to and decided by this court. The law is settled beyond further controversy and the result usually turns upon the facts. No two cases are exactly alike, and hence, other decisions on different facts and circumstances are of little assistance, in reaching a correct conclusion in new cases as they arise. The question at last is whether, notwithstanding the form of the transaction, the wife was attempting to secure a debt entirely her husband's upon which she was not bound either separately or jointly. We have given the evidence careful examination. It lies within a small compass, and it has not been difficult to secure full consideration thereof by each of the judges who participate in this decision.

The consideration of the note, secured by the mortgage of January 18, 1896, now sought to be foreclosed, was the surrender and cancellation of two other notes, and mortgages of an earlier date, in like manner duly executed by the wife to the same mortgagee, her husband joining therein, as required by the statute, to constitute a valid conveyance. Attention must, therefore, be directed to the two previous transactions. At the outset, an important fact, established by the undisputed evidence, and in the light of which the transactions, and

[Gibson v. Wallace.]

the testimony of the two parties must be interpreted should be noted. The wife owned the farm, agricultural implements, and live stock; the husband owned nothing, and this fact was known to Wallace. In 1904 a stock of plantation supplies was purchased by the husband from the proceeds of cotton grown on the wife's land, and with this he conducted, in her name, a small store. She gave no personal attention to her business affairs, their management was confided solely to the husband. According to her evidence, he superintended the making of the crops, bought all the supplies that were not raised at home, and superintended the gathering and selling of the crops. Furthermore, she was accustomed to sign notes and mortgages on her property, without question, when requested by the husband, and the money obtained upon them was delivered to him, and, as we may well presume, for use in employing laborers, purchasing supplies, including corn when needed, paying taxes, and otherwise meeting the demands of her mercantile and planting operations. In fact, the evidence establishes the use in this way of a portion of the money borrowed upon each of the previous mortgages. The death of the husband, before this bill was filed, prevented any evidence as to what was done with the remainder. This, however, is not important; under repeated decisions of this court, it is no concern of the lender to the wife that she gives the money to her husband or places it in his hands for disbursement.

We will now consider the evidence as to each of the previous mortgages, cancellation of which formed the consideration of the instrument directly involved in this case. In respect of the mortgage of March 2, 1894, there is little room for controversy. Although there is no doubt of the fact that the husband, in the exercise of his authorized general superintendence of the wife's affairs, arranged the preliminaries, and induced the mortgagee to bring the money to their farmhouse together with a prepared mortgage ready for execution, yet she well understood the loan was made to her, and she admits the money was placed in her hands, with the statement that it was hers. The circumstances attending the mortgage

of January 18, 1889, in their general outline, are satis-factorily shown, without material conflict. The note and mortgage were prepared by the husband at their home, some miles from the residence of the mortgagee, duly executed there before a justice of the peace, and sent to the mortgagee by a farm laborer to whom the money was delivered, and who, after paying out of it the taxes of the wife and her son, carried the balance to the home of the grantors in the mortgage. The evidence conflicts upon the inquiry whether the money was handed to the husband or the wife by the messenger, but, as above stated, this is not important, if other evidence proves a loan to her.

This leaves for consideration a paragraph in the deposition of Wallace, upon which the appellant strongly relies to establish the contention that the loan of 1889 was made to the husband alone We quote it literally: "Mrs. Gibson did not apply to me in 1888 to loan her $270 or any other amount. In 1888 Jim Gibson was up here and wanted to borrow some money. I told him I could not loan it to him as he had nothing to secure it with. But if he could get his wife to give a mortgage on the land that I would let him have the money. He went away and the next thing I knew about it Crow came up with the mortgage signed up and got the money. That is the mortgage dated January 18, 1889 with which Crow also brought a letter from Gibson and Mrs. Gibson and got the money." The letter which is produced, signed by both, requested that the money be sent them for the note and mortgage by the bearer Crow, and there-upon, contemporaneously with the delivery of the instruments, purporting to bind her and her land, the money was confided to their authorized agent as request-ed by both.--*Lunsford v. Harrison*, 131 Ala. 263, 31 South. 24. In the light of the general agency of the husband, and the declaration of the mortgagee that he would not make a loan to the husband, we interpret the mortgagee's statement to mean that he would let him have the money for the wife, and as her representative, and upon the faith of a valid security; and this interpretation is supported by what followed in the preparation and delivery

[Black v. Sullivan Timber Company, *et al.*]

of the mortgage, the writing of the letter to the mortgagee and the use of the money, at least in part. Other considerations might be stated lending support to our conclusion, but they would unduly prolong the opinion.

We have considered the legal evidence only and all the legal evidence found in the record; there is no occasion to review the rulings of the chancellor, admitting or excluding parts of the testimony.

The decree was correct and will be here affirmed.

Affirmed.

Tyson, Simpson, and Anderson, JJ., concur.